In the Matter of Disciplinary Proceedings Against
Joe E. Kremkoski, Attorney at Law:

Office of Lawyer Regulation, Complainant,

v.

Joe E. Kremkoski, Respondent.

Supreme Court

*No. 03–2123–D. Decided December 21, 2004.*

2004 WI 150

(Also reported in 690 N.W.2d 430.)

¶ 1. PER CURIAM. We review the referee's report, findings of fact, and conclusions of law, based on the parties' comprehensive stipulation that Attorney Joe E. Kremkoski committed five counts of professional misconduct as alleged by the Office of Lawyer Regulation (OLR) in the complaint it filed in this court on August 12, 2003. The referee recommended that a private reprimand be issued as a sanction for this misconduct. After reviewing the parties' responses to this court's order to show cause why a public reprimand should not be imposed, we reject the referee's recommendation and publicly reprimand Attorney Kremkoski for his professional misconduct. We accept the referee's recommendation that Attorney Kremkoski pay all the costs related to this disciplinary proceeding now totaling $4116.33. Also, as the referee recommended, we impose certain conditions upon Attorney Kremkoski's license to practice law in this state.[1]

¶ 2. Joe E. Kremkoski was admitted to practice law in this state on May 18, 1976, and practices in

---

[1] Neither Attorney Kremkoski nor the OLR has appealed from the referee's report and recommendation and accordingly, this court's review is pursuant to SCR 22.17(2) which provides, in pertinent part: "(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions and remand the matter to the referee for additional findings; and determine and impose appropriate discipline . . . ." For the reasons explained in this opinion, we conclude that a public, rather than private reprimand as recommended by the referee, is the appropriate discipline to be imposed in this situation.

84

Racine. Kremkoski's prior disciplinary history consists of a 1997 consensual private reprimand.[2]

¶ 3. On August 12, 2003, the OLR filed a complaint in this court against Kremkoski alleging five counts of professional misconduct. In general, the complaint alleged misconduct consisting of Kremkoski representing a client in the same or a substantially related matter in which that person's interests were materially adverse to the interests of a former client; failing to hold money in trust; failing, upon termination of representation, to refund an unearned advance payment of fees; failing· to act with reasonable diligence and promptness in representing a client; and failing to keep a client reasonably informed about the status of a matter and comply with reasonable requests for information.

¶ 4. This court appointed Attorney Dennis J. Flynn to act as referee in this matter. After a public hearing was scheduled by the referee, the parties entered into a comprehensive stipulation by which Attorney Kremkoski admitted to the five counts of professional misconduct as alleged by the OLR's complaint. More specifically, Attorney Kremkoski has now stipulated to the following facts and admitted committing the following counts of misconduct.

## COUNTS 1 THROUGH 3

¶ 5. In August 2000 Kremkoski represented C.S. and filed a petition on C.S.'s behalf seeking a domestic

---

[2] That 1997 consensual private reprimand was for Kremkoski's misconduct consisting of failing to file a complaint when he knew the statute of limitations would soon expire; failing to inform a client that the statute of limitations had expired; and making repeated misrepresentations about receiving a $100 payment from the client.

injunction against B.V. That injunction was granted and B.V. was barred from contacting C.S. for a period of two years.

¶ 6.  In May 2001 B.V. asked Kremkoski to represent him on "a couple of misdemeanors"; Kremkoski agreed to do so for a fee of $500. One of the misdemeanor counts against B.V. included an allegation that he had violated the domestic abuse injunction Kremkoski had obtained for C.S. nine months earlier.

¶ 7.  Two days after B.V.'s initial appearance on the misdemeanor counts, Kremkoski appeared on B.V.'s behalf at his initial appearance on a four-count felony complaint that had been filed. Kremkoski informed B.V. that due to the nature of the felony counts, Kremkoski required an additional "nonrefundable" retainer of $1500. Kremkoski also informed B.V. that Kremkoski's hourly fee was $150. There were, however, no written fee agreements with respect to either the $500 B.V. had paid Kremkoski for the misdemeanor representation or for the additional $1500 on the felony matters. B.V. subsequently paid the $1500 in two installments of $750 each by checks dated May 23, 2001, and June 4, 2001. Kremkoski, however, did not deposit those checks into his client trust account.

¶ 8.  On June 27, 2001, Kremkoski appeared on behalf of B.V. at an initial appearance on two new cases in Racine county both of which involved allegations of B.V.'s violation of the domestic abuse injunction Kremkoski had previously obtained for C.S., as well as a bail jumping count. Kremkoski, however, had not obtained C.S.'s written consent prior to representing B.V. in these criminal cases.

¶ 9.  C.S. later informed the assistant district attorney handling the cases about Kremkoski's prior representation of C.S. in obtaining the domestic abuse

injunction that B.V. was charged with violating. The assistant district attorney notified the circuit court and subsequently Kremkoski withdrew from representing B.V. in the felony and misdemeanor matters.

¶ 10. Kremkoski's office records reflect that he worked 6.1 hours on B.V.'s criminal matters; accordingly, at Kremkoski's quoted $150 per hour fee rate, he had earned fees totaling $915. When B.V. subsequently asked Kremkoski if he would refund any of the $1500 retainer B.V. had paid, Kremkoski told B.V. that the fee was nonrefundable.

¶ 11. In November of 2001, after Kremkoski had withdrawn from representing B.V. in the earlier criminal cases, Kremkoski represented B.V. in other legal matters. When B.V. was released from jail in October 2001 he again asked Kremkoski if he would refund any of the $1500 fee previously paid and Kremkoski responded that he would not do so but that B.V. should " . . . not worry about the fees in his other legal matters."

¶ 12. This course of conduct, to which Kremkoski has now stipulated, led to the following three misconduct counts.

- Count One: By representing B.V. in criminal matters that included B.V.'s alleged violations of a domestic abuse restraining order which Kremkoski previously obtained on behalf of a former client, Kremkoski represented another person in the same or a substantially related matter in which that person's interests were materially adverse to the interests of the former client, without obtaining the former client's consent in writing after consultation, in violation of SCR 20:1.9(a).

- Count Two: By failing to deposit in his trust

account two advance payments for fees in a criminal matter, Kremkoski failed to hold in trust, separate from his own property, an advance fee, in violation of SCR 20:1.15(a).

- Count Three: By failing to return any unearned portion of the $1500 advance fee to B.V. upon termination of Kremkoski's representation of B.V. in the criminal matters, Kremkoski, upon termination of representation, failed to take steps to the extent reasonably practicable to protect a client's interests, such as refunding any advance payment of fee that has not been earned, in violation of SCR 20:1.16(d).

## COUNTS FOUR AND FIVE

¶ 13. B.W. retained Kremkoski to represent her in her divorce action; the divorce was granted on April 3, 2001, and the judgment was filed on April 12, 2001. As part of the property division, B.W. was awarded the marital home; this required a transfer of her former husband's interest by quitclaim deed which Kremkoski was responsible for drafting. Kremkoski brought with him to the divorce hearing that was held on April 3, 2001, a quitclaim deed he had drafted for B.W.'s former husband to sign; however, that quitclaim deed contained an error and therefore could not be signed until it was redrafted. Kremkoski told his client B.W. that he would redraft the document but despite her repeated telephone calls after the divorce hearing, he failed to do so. Kremkoski also did not respond to many of the phone calls. Because B.W. needed the quitclaim deed in order to refinance her home and take advantage of the then available interest rate, she had to obtain someone else to redraft the deed for her. B.W. then obtained her former husband's signature on the redrafted quitclaim deed.

88

¶ 14. In addition, the divorce judgment provided that B.W.'s former husband was to transfer to her the sum of $10,500 by a Qualified Domestic Relations Order (QDRO) which Kremkoski was to draft. B.W. did not have access to those funds, held in her former husband's 401k account, until completion of the QDRO.

¶ 15. From April 3, 2001, through March 11, 2002, B.W. frequently telephoned Kremkoski urging him to complete the QDRO. Kremkoski returned only one of B.W.'s phone calls and then spoke to a person other that B.W. Kremkoski finally called the 401k plan administrator in December of 2001 and prepared a QDRO which he forwarded to the plan administrator. The plan administrator, however, rejected that QDRO in March 2002.

¶ 16. Following the commencement of the OLR investigation in May of 2002, Kremkoski prepared a new QDRO and sent it to the plan administrator on July 17, 2002. That QDRO was accepted in August of 2002 and was ultimately accepted by the divorce court on September 27, 2002.

¶ 17. This course of conduct, to which Kremkoski has now stipulated, led to the following two counts of misconduct.

- Count Four: By failing to redraft the quitclaim deed for B.W. and by failing to timely complete B.W.'s QDRO, Kremkoski failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

- Count Five: By failing to respond to B.W.'s telephone calls regarding the status of her quitclaim deed and her QDRO, Kremkoski failed to keep a client reasonably informed about the status of a matter and comply with reasonable

89

requests for information, in violation of SCR 20:1.4(a).

¶ 18. Because Kremkoski stipulated to the facts as alleged in the OLR's complaint, the dispute before the referee focused on the discipline to be recommended for Kremkoski's admitted misconduct regarding these five counts. The OLR maintained that a public reprimand should be imposed as a sanction because the five counts involve both client neglect and conflicts of interest. According to the OLR a public reprimand would be consistent with numerous prior cases in which public reprimands have been imposed for similar types of misconduct involving conflicts of interest and client neglect. The OLR also pointed out that the American Bar Association's Standard for Imposing Lawyer Sanctions—1991 Edition, suggests that a public reprimand is an appropriate sanction for this type of misconduct and that according to the ABA standards, only cases involving "minor misconduct"—*i.e.*, when there is little or no injury to a client, the public, the legal system, or the profession, and little likelihood of repetition by the lawyer, that a private reprimand is appropriate.

¶ 19. Furthermore, the OLR asserted that a public reprimand was appropriate in this case because Kremkoski breached a fundamental duty to his client —the duty of loyalty—by representing B.V. after having earlier represented C.S. in obtaining a domestic abuse injunction against B.V. The OLR noted that that conduct carried a significant risk that Kremkoski might reveal confidential information that C.S. had provided to him during the time he represented her.

¶ 20. In addition, the OLR asserted that Kremkoski had breached his duty to B.V. by failing to place the $1500 retainer he had received in a trust account and

then in failing to return any of the retainer after only performing 6.1 hours of legal work for B.V. The OLR asserted that the remaining amount of that retainer should have been immediately returned to B.V. upon termination of Kremkoski's representation.

¶ 21. Similarly, the OLR maintained that Kremkoski had breached his duty to his divorce client, B.W., by failing to timely draft and file the quitclaim deed and the QDRO, and by failing to respond to her numerous telephone calls regarding the status of the matter. The OLR observed that although Kremkoski finally redrafted the QDRO, that had occurred only after he had been contacted by the OLR about B.W.'s grievance.

¶ 22. Finally, the OLR argued that Kremkoski's misconduct in this case was aggravated by the fact that he had previously been disciplined for neglect of a client matter. According to the OLR, a public reprimand was necessary to emphasize to Kremkoski the serious nature of his misconduct and to deter him and other attorneys from engaging in similar misconduct in the future.

¶ 23. Kremkoski, on the other hand, urged the referee to recommend a private reprimand as an appropriate sanction. Kremkoski emphasized certain facts including the fact that when he had agreed to represent B.V., Kremkoski thought the focus of the criminal charges would be on the felony matters, not on B.V.'s alleged violation of the domestic abuse injunction which Kremkoski believed that C.S. had attempted to rescind after she and B.V. had reconciled. Kremkoski also pointed out that he had informed B.V. that the $1500 retainer was "nonrefundable" and that, in any event, that retainer amounted to fees that were earned upon payment.

¶ 24. Kremkoski also identified certain mitigating factors; although he conceded these factors would not necessarily excuse his misconduct, he believed they would explain the circumstances surrounding it. For example, he pointed out that during the time period alleged by the OLR for this misconduct, Kremkoski and his wife were caring for his mother-in-law who lived with them until she died in September 2001. Also during that same period, Kremkoski and his wife were caring for his wife's aunt who had Alzheimer's disease. And finally, Kremkoski pointed out that in October 2001, his son was called to active duty with the Air National Guard and served in combat in Afghanistan for four months.

¶ 25. The referee was persuaded by Kremkoski's claim that he was under stress at the critical time this misconduct occurred. The referee noted that although Kremkoski was not claiming that he was suffering from a mental illness, he was claiming that the number of stressors he faced during this period of time should be considered as mitigation of his conduct. The referee agreed that the evidence was relevant and concluded that there was no need for expert testimony to establish a causal connection between these stressful events and Kremkoski's actions.

¶ 26. Accordingly, the referee recommended that a private reprimand would be an appropriate sanction in this case because it " . . . appropriately responds to the misconduct of this case and also gives recognition to the mitigating factors that are unique to this matter."

¶ 27. In addition to the private reprimand, the referee recommended that Kremkoski be ordered to obtain at least eight hours of continuing legal education focusing on ethics education each year for the next three years. The referee suggested that special empha-

sis should also be on CLE seminars relating to the use and management of client trust accounts, reasonably responding to contacts from clients regarding the status of a case, conflicts of interest, utilization of written retainer agreements, and the timely performance of legal services by counsel. In addition, the referee recommended that Kremkoski should inform himself about bar programs providing help to lawyers who are "experiencing significant, non-law-practice-related stress."

¶ 28. Finally, the referee recommended that Kremkoski be required to pay all the costs related to this disciplinary proceeding which now total $4116.33.

¶ 29. As noted, this court ordered Kremkoski to show cause why a public reprimand should not be imposed instead of the private reprimand recommended by the referee. Both Kremkoski and the OLR have submitted responses basically reiterating their arguments before the referee. Kremkoski again urges this court to impose a private reprimand, and the OLR again advocates a public reprimand as a sanction.

¶ 30. After reviewing the parties' arguments and respective positions, as well as the referee's report and analysis, we conclude—especially in light of the fact that Kremkoski previously received a private reprimand in 1997 for conduct involving the neglect of a client matter—that a public reprimand is warranted in this case in order to emphasize the serious nature of Kremkoski's misconduct and to deter him and other attorneys from engaging in similar misconduct in the future. Although not unsympathetic to the stress Kremkoski was experiencing during the relevant periods, the court thinks that such stress does not explain Kremkoski's failure to appreciate the serious conflict of

interest he faced by representing both C.S. and B.V. in the situation described in the OLR complaint.

¶ 31. Under all the circumstances, we conclude that Joe E. Kremkoski should be publicly reprimanded for his five counts of misconduct as committed in this case. We further conclude, as the referee recommended, that Kremkoski obtain continuing legal education credits focusing on the specific areas suggested by the referee, including at least eight hours per year for the next three years of continuing legal education credits dealing with ethics. In addition, we conclude that Kremkoski must pay all costs related to this disciplinary proceeding now totaling $4116.33.

¶ 32. IT IS ORDERED that Joe E. Kremkoski is publicly reprimanded for professional misconduct.

¶ 33. IT IS FURTHER ORDERED that Joe E. Kremkoski must obtain eight hours of continuing legal education each year for the next three years focusing on ethics and that during that same period, he shall attend continuing legal education seminars emphasizing the following: the use and management of client trust accounts; the duties of attorneys to reasonably respond to client contacts regarding the status of cases; the avoidance of conflicts of interest; the utilization of written retainer agreements; and the timely performance of legal services by counsel.

¶ 34. IT IS FURTHER ORDERED that within 60 days of the date of this order Joe E. Kremkoski pay to the Office of Lawyer Regulation all the costs of this proceeding providing that if such costs are not paid within the time specified and absent a showing to the court of his inability to pay the costs within that time,

the license of Joe E. Kremkoski to practice law in Wisconsin shall be suspended until further order of this court.